Johnson, J.
The question growing out of the grounds of this motion, are :—
1. Whether the plaintiffs’ right to redeem the slaves, Jack and Hester, and for an account of their hire, is not barred by time.
2. Whether the defendant is, in any event, bound to account for their hire during the time he has had them in possession.
*1. The defendant has been in possession of the slaves from 1822 down to the present time, and that provision of the act of L 1112, Pub. Laws, 101-2-3, which limits the bringing of the action of trover to four years after the cause of action arose, and also that which limits the right of the mortgager .of slaves to redeem to two years after condition broken, when the mortgagee is in possession, are both relied on in support of the affirmation of the first proposition, but neither of them will sustain it. It is a familiar rule that the general provisions of the statute of limitations will not operate as a bar, unless the possession of the chattel is against the will, and adverse to the rights of the party claiming. Here the defendant’s possession of the slaves commenced with the e onsent of the plaintiff’s intestate, and by the terms of the agreement endorsed on the mortgage he was to hold subject to the uses, and upon the terms therein expressed : so that the operation of the general provisions of the statute must be resolved, not according to the time when the defendant obtained the possession, but according to legal effect of the mortgage and the agreement thereon endorsed. The time fixed by the mortgage for the payment of the money was the first of January, 1824, and the mortgager not having redeemed within the two years precribed by the act, the right to redeem, if that depended on the legal effect of the mortgage alone, would unquestionably have been barred, and it was so ruled in Montgomery v. Kerr, 1 Hill, 291. But I concur with the Chancellor that the legal effect of the mortgage, in this particular, is counteracted by the agreement endorsed upon it. By this, the defendant acknowledges to have received the slaves mortgaged “in lieu of the interest” on the money owing, and that they were to continue in his possession “ until the said notes be paid, upon which payment I promise and declare that I will deliver to the said Thomas (the plaintiff’s intestate) the said slaves, with the issue and increase, if any there should be, without delay or default.” Without this agreement, defendant would have been bound, according to the legal effect of the mortgage, to have delivered up the slaves to the plaintiffs, or their intestate, on the payment of the money, at any time within two years after condition broken, and the agreement is an idle and useless repetition of the terms of the mortgage, unless it was intended to extend the time of redemption beyond the time limited by the act; and such is the necessary import of the terms used. The slaves were to continue *in possession of the defendant in r^iirq lieu of interest “until the said notes be paid up, on which pay- L ment” he was to redeliver them to the plaintiffs’ intestate, without. *142 reference to the time fixed by either the note or mortgage; and it is impossible to give it any effect, but by construing it into an agreement to permit the intestate to redeem without any limitation as to time : the limitation of two years provided for in the statute cannot therefore operate as a bar.
2. The agreement before referred to, expresses v,£ry clearly the- intention of the parties that the services of.the slaves should be received by the defendant for the interest of the money secured to be paid by the mortgage, and if that contract is valid, there can be no question that defendant is not bound to account for their hire. But a supposed, inequality between the value of the services of the slaves and the amount of interest, is the foundation of an allegation on the part of the plaintiffs that the contract was usurious and void, and therefore they are entitled to an account.
The statute against usury would avail but little, if it could be evaded by the substitution of something else than money for the interest, without regard to its value, and consequently all attempts of that sort have utterly failed. When the thing substituted is confessedly of greater value, or where, although the value is contingent, the probable result so far exceeds the amount of interest as to manifest a corrupt intent to secure a greater rate of interest than is allowed by law, the contract is usurious. Thus, if one lend £100 to have £120, at the year’s end on a casualty ; if the casualty goes to the interest only, and not to the principal, it is usury, for the party is sure of the principal, come what will of the interest; but if the principal and interest are both in jeopardy, it is not then usury — Per Dodridge J. Cro. Jac. 508; 5 Co. 19, as cited in Com. Dig. Usury, A.; (see also Morse v. Wilson, 4 D. & E. 353.) So that if the value of the services of these slaves so far exceeded the amount of interest as to authorize the conclusion that it was a device to avoid the statute against usury, the contract is unquestionably void. The evidence of the value of the hire at the date of the mortgage is not very clear. In his answer, the defendant states that they were then mere children, eight or ten years old, and not worth the interest; and the only evidence on the point noticed in the decree, pointing directly to that period, is, that Jack was then a boy; and although the same witness says, in connection with it, that he hired him at the rate of seven dollars per s„-j month, he ^evidently referred to a subsequent period ; so that the J reasonable inference is, that during all the time intervening between the date of the mortgage and the time of payment, the value of hire did not exceed the amount of interest — not so far, at any rate, as to authorize the inference that there was an usurious intent in substituting their services for the interest. The contract was therefore legal in its inception, and no subsequent adventitious circumstance, superinduced by the neglect of the plaintiff’s intestate to pay the money within the time limited in the mortgage, could render it illegal; and notwithstanding the apparent equity of requiring the defendant to account for the subsequent increased value of the hire, that would be to substitute a new contract between the parties — a power which this Court explicitly disclaims.
So much of the decree of the Circuit Court as directs an account of the hire of the slaves is therefore reversed, and in all other respects it is affirmed.
O’Neale, J., and Harper, J., concurred.